**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

UMB BANK, N.A.,
as Trustee,

   Plaintiff,

   v.

NEW PORT COMMUNITY DEVELOPMENT
AUTHORITY, CITY OF PORTSMOUTH,
VIRGINIA, and THE CITY TREASURER,
PAIGE D. CHERRY, IN HIS OFFICIAL
CAPACITY,

Defendants.

SERVE:

NEW PORT COMMUNITY DEVELOPMENT
AUTHORITY
c/o Bryant Thomas, Member
Board of Directors
180 N. Main Street
Suffolk, VA 23321

CITY OF PORTSMOUTH
c/o LaVonda Graham-Williams, City Attorney
810 Crawford Street
Portsmouth, Virginia 23704

PAIGE D. CHERRY, CITY TREASURER
801 Crawford Street
Portsmouth, Virginia 23704

CIVIL NO. _____

_ACTIVE 62769145v6_

## COMPLAINT

PLAINTIFF UMB BANK, N.A., solely in its capacity as successor trustee ("*UMB Bank*" or "*Trustee*") for the Trust Estate[1] created by that certain *Indenture of Trust* dated as of May 1, 2006 (the "*Master Indenture*"), as amended by that certain *First Supplemental Indenture of Trust* dated as of June 1, 2006 (the "*First Supplemental Indenture*"), and that certain *Second Supplemental Indenture of Trust* dated as of April 1, 2015 (together with the Master Indenture and First Supplemental Indenture, the "*Trust Indenture*") for the New Port Community Development Authority Special Assessment Bonds, Series 2006 (the "*Bonds*"), hereby sues DEFENDANTS NEW PORT COMMUNITY DEVELOPMENT AUTHORITY (the "*Authority*" or "*CDA*"), CITY OF PORTSMOUTH, VIRGINIA (the "*City*"), and PAIGE D. CHERRY, in his official capacity as Treasurer in and for the City (the "*City Treasurer,*" and together with the Authority and City, the "*Defendants*"), and in support thereof states

### SUMMARY OF COMPLAINT

This action arises out of the Authority's breach of its obligations under the Master Indenture and the City and City Treasurer's refusal to comply with their obligations to enforce the collection of Delinquent Assessments (hereinafter defined) and distribute proceeds from the resultant tax auction of the Delinquent Property (hereinafter defined) to the Trustee, pursuant to the terms of the Master Indenture (hereinafter defined) and Special Assessment Agreement (hereinafter defined), for purposes of paying debt service on the Bonds.

### PARTIES

1.      Plaintiff UMB Bank is a national banking association that has designated Kansas City, Missouri, as the location of its main office in its articles of association. Therefore, pursuant

---

[1] *See* §2.1 of the Master Indenture (hereinafter defined) for a description of property comprising the Trust Estate.

to 28 U.S.C. § 1348, *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303 (2006), and for purposes of 28 U.S.C. § 1332(a), UMB Bank is a citizen of the State of Missouri.  UMB Bank's principal place of business is located at 1010 Grand Boulevard, Kansas City, Missouri 64106.

2.    Defendant City is an independent city in and political subdivision of the Commonwealth of Virginia with its principal place of business located at 801 Crawford Street, Portsmouth, Virginia 23704.  The City is not a citizen of the State of Missouri.

3.    Defendant Authority is a public body politic and corporate and political subdivision of the Commonwealth of Virginia with its principal place of business c/o Portsmouth Venture One, L.L.C., 448 Viking Drive, Suite 220, Virginia Beach, Virginia  23452.  The Authority is not a citizen of the State of Missouri.

4.    Defendant City Treasurer, in his official capacity as Treasurer of  the City and constitutional officer in the Commonwealth of Virginia pursuant to Section 4, Article VII of the Constitution of Virginia and Va. Code § 15.2-1600, with his principal place of business located at 801 Crawford Street, Portsmouth, Virginia 23704.  The City Treasurer is not a citizen of the State of Missouri.

JURISDICTION AND VENUE

5.    The Court has subject matter jurisdiction pursuant to 28 USC § 1332(a)(3) because Plaintiff is citizen of the State of Missouri, and all of the Defendants are citizens of the Commonwealth of Virginia.

6.    The amount in controversy exceeds $75,000.00, exclusive of interest and costs. Without limitation and as alleged below, the damages sought in Counts I – III of this Complaint – collection, enforcement and remittance to UMB Bank of the Delinquent Assessments and related interest and penalties – exceed the $75,000.00 jurisdictional threshold.

7.     The Court has personal jurisdiction in this civil action under 28 U.S.C. § 1332(a)(3) over (a) Defendant Authority because it is organized as a public body politic and corporate and political subdivision governed by the laws of the Commonwealth of Virginia ; (b) Defendant City because it is a body politic and a political subdivision of the Commonwealth of Virginia ; and (c) Defendant City Treasurer because in his official capacity is a constitutional officer under the Constitution of Virginia and the Code of Virginia.  Further, the actions and inactions of Defendants all occurred in Portsmouth, Virginia.

8.     Venue is proper in the Norfolk Division of the Eastern District of Virginia pursuant to 28 U.S.C. § 1391(b)(2) and Local Civil Rule 3(b) because the Delinquent Property and Defendants are located in Portsmouth, Virginia, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Portsmouth, Virginia.

GENERAL ALLEGATIONS

A.  *THE AUTHORITY AND DISTRICT.*

9.     The development that is the subject of this case is a planned residential development known as "New Port" located in the City (the "***Project***").

10.     On August 23, 2005, the City created the Authority and a special assessment district known as the "New Port Community Development Authority District" ("***District***") with boundaries co-terminus with the Project. Ordinance No. 2005-71, **Exhibit 1** attached hereto.

11.     The Authority is a public body politic and corporate and political subdivision of the Commonwealth of Virginia, with the powers set forth in the Virginia Water and Waste Authorities Act, Chapter 51, Title 15.2, Code of Virginia of 1950, as amended.

12.     The Authority was established by the City after determining that "advance financing of infrastructure costs through the CDA will accelerate development of the Planned

4

Community and thereby improve benefits for the city.  In short, the City concluded that a CDA for the Planned Community will ultimately benefit all citizens." *Memorandum of Understanding,* **Exhibit 2** attached hereto at ¶G.

B. *THE SPECIAL ASSESSMENTS; RELATED PLEDGE AND COVENANTS.*

13.     On February 14, 2006, the City adopted an ordinance levying Special Assessments[2] (the "**Assessment Ordinance**") on real property in the District in accordance with the *Rate and Method of Appointment of Special Assessments* attached as Exhibit A to the Assessment Ordinance (the "**Rate and Method**").  Assessment Ordinance, **Exhibit 3** attached hereto.

14.     The Special Assessments constitute liens against taxable real property in accordance with Virginia Code  §§ 15.2-2404 *et seq.*, and "shall be subject to the same penalties, procedures, sale, and lien priorities in case of delinquencies as are provided for regular property taxes of the City."  Rate and Method at ¶E; Va. Code §§15.2-5125 and -5158.

15.     Thereafter, the City, Authority and Portsmouth Venture One, LLC, the former developer and owner of lands within the Project (the "**Former Developer**"), entered into that certain *Special Assessment Agreement*, **Exhibit 4** attached hereto, setting forth the parties' understanding with respect to, among other things, (a) issuance of the Bonds, (b) development of the Project, and (c) the Special Assessments (including, the collection of delinquent Special Assessments).

16.     In relation to the pledge, collection, and enforcement of the Special Assessments, the Special Assessment Agreement provides, in relevant part:

> "Penalties and interest on delinquent payments of the Annual Installment shall be charged as provided by law. The Annual Installment shall be included on the City's regular real estate tax bill and shall be billed and collected on the same dates as the City's real estate taxes. Payments of the Annual Installment collected by the City

---

[2] Capitalized terms not defined herein shall have the meaning ascribed to the term in the Trust Indenture.

shall be segregated from all other funds of the City and may not be used for any other purpose by the City." Special Assessment Agreement at §4(c).

"The [Authority], in turn, will pledge and assign all of its right, title and interest in the Annual Installments to the Trustee for the Bonds who will use the moneys received, except for amounts segregated for administrative expenses, to make debt service payments on the Bonds before forwarding any remainder to the [Authority] and the City agrees to make all such payments directly to the Trustee for the Bonds. The Annual Installments assigned by the City include any payments from foreclosures, less costs of collection, and exclude administrative fees for the cost of administration as described in paragraph 4(f) herein." Special Assessment Agreement at §4(d).

"The City's customary tax payment enforcement proceedings will apply to the collection of any delinquent payment of the Annual Installment. The City shall pursue the collection of delinquent payments with the same diligence it employs in the collection of the City's general ad valorem real estate taxes, including the commencement of tax foreclosure proceedings to the extent provided by the then-current statutes of the Commonwealth of Virginia." Special Assessment Agreement at §4(e); *see also* Memorandum of Understanding at §5 ("The City will collect the special assessment, … at the same times it collects real estate taxes on such properties …, and it will transfer all funds thus collected either to the [Authority] or, …, directly for payment of the Bonds.")

17.     On May 12, 2006, the Authority issued the Bonds in the initial principal amount of $16,240,000 (i) to finance the costs of certain infrastructure improvements as described therein, (ii) to fund a debt service reserve fund, (iii) to pay certain construction period interest on the Bonds, (iv) to fund certain Administrative Expenses, and (v) to pay the costs of issuing the Bonds. Master Indenture, **Exhibit 5** attached hereto at p. 1.

18.     The Authority and the City, and their respective citizens, continue to benefit from the infrastructure improvements acquired by the Authority using proceeds from the sale of its Bonds.

19.     In support of and contemporaneously with the Authority's sale of its Bonds, the City Attorney, G. Timothy Oksman, executed and provided a legal opinion, **Exhibit 6** attached hereto (the "***City's Opinion***"), that states, in relevant part, "[t]he Special Assessment Agreement

was duly authorized, executed and delivered by the City and remains a legal, valid and binding obligation of the City enforceable against the City in accordance with its terms." City's Opinion at ¶4.

20.    Further, to secure repayment of the Bonds and performance of all obligations of the Authority, the Authority pledged, assigned, and granted to the Trustee a security interest in, among other things, all Pledged Revenues, Master Indenture at §2.1, including Special Assessment Revenues defined as:

> "*the amounts collected pursuant to the Special Assessments*, and appropriated by the City to the Authority *including any* prepayments thereof, *interest thereon and proceeds of the redemption or sale of property sold as a result of foreclosure of the Special Assessment lien, penalties and default rate of interest and interest thereon.* 'Special Assessment Revenues' does not include any Administrative Expenses collected by the City in connection with delinquent Special Assessments or other Administrative Expenses payable to the City in accordance with the Special Assessment Agreement." (emphasis added)

Master Indenture at §1.1.

21.    The Authority in the Master Indenture also represented and covenanted with regard to the collection, enforcement, and pledge of the Special Assessments:

> "The Special Assessments shall be payable in the same manner and at the same time as the ad valorem real estate taxes on real property are payable, and become delinquent at the same time and in the same proportionate amounts and bear the same proportionate penalties and interest after delinquency as do the ad valorem taxes on real property in the City." Master Indenture at §9.3.

> Pursuant to the Special Assessment Agreement, the City has agreed to pursue collection of delinquent Special Assessments (unless such delinquency is theretofore brought current) in a manner similar to its collection efforts expended to collect any ad valorem tax or installment thereof when not paid when due." Master Indenture at §9.4.

22.    Finally, the Chair of the Authority's governing Board signed and transmitted to the Chief Financial Officer and City Treasurer that certain *New Port Community Development Authority – Notice of Special Assessments,* **Exhibit 7** attached hereto (the "*Assessment Notice*"),

7

directing the Chief Financial Officer and Treasurer "to pay all special assessment payments collected by the City with respect to the [Authority] (the "Payments"), along with any prepayments of the special assessments and any remittances of penalties and interest on delinquent payments to [the Trustee]." Assessment Notice at ¶2.

23. In sum, (a) the City levied the Special Assessments for the Authority, (b) the Authority irrevocably pledged the Special Assessments, interest and penalties to the Trustee to pay debt service on the Bonds, (c) if and when an owner of land subject to the Special Assessments failed to pay same when due ("*Delinquent Assessments*"), the City and City Treasurer agreed to timely enforce and remit same, together with interest and penalties, to the Trustee.

C. *SPECIAL ASSESSMENT DELINQUENCIES; TAX SALES.*

24. One or more landowners in the District failed to pay when due Special Assessments apportioned to the real property described in **Exhibit 8** attached hereto (the "*Delinquent Property*"), thus resulting in the City and City Treasurer's inability to remit to the Trustee, per the Special Assessment Agreement, Rate and Method and Master Indenture, sufficient Special Assessment Revenues to pay principal and interest when due on the Bonds.

25. The Trustee's failure to receive from the City and City Treasurer sufficient Special Assessment Revenues resulted in Events of Default occurring pursuant to Section 11.1 of the Master Indenture.

26. In April 2019, the City commenced three (3) judicial proceedings seeking to have the Delinquent Property sold to pay Delinquent Assessments and other property taxes, together with any penalties, interest, fees, and costs accruing thereon. In July 2020, more than two-and-a-half years prior to the filing of this Complaint, the City obtained Decrees of Sale in the foreclosure proceedings, **Exhibits 9A – 9C** attached hereto (the "*Decrees of Sale*").

8

27.     Based on the provisions referenced above regarding the allocation of penalties and interest on the Delinquent Assessments (*see* ¶¶9, 11, 15-17), the Bondholder (hereinafter defined) advised representatives of the City of its belief that proceeds from the tax auction should be allocated by and among the City and Trustee as described in **Exhibit 10** attached hereto – the City and City Treasurer *via* the Original Special Commissioner (hereinafter defined) provided to representatives of the Trustee and Bondholder an alternative allocation, **Exhibit 11** hereto, without citing to a basis therefor and, perplexingly, in clear violation of the terms of the Master Indenture and Special Assessment Agreement.

28.     Following the Court's issuance of the Decrees of Sale, representatives of the Trustee and sole beneficiary of the Trust Estate for the Bonds (the "***Bondholder***"), undertook extensive efforts to engage with the City and City Treasurer in discussions regarding, among other things, the Decrees of Sale, tax sales, disclosures relating to the Delinquent Property, and allocation of tax sale proceeds.

29.     Efforts to engage the City and City Treasurer were undertaken by representatives of the Trustee and Bondholder to ensure, among other things, that a prospective purchaser of the Delinquent Property had information made available to them prior to the tax sales regarding the developability of the Delinquent Property – the property being undeveloped parcels and, therefore, requiring substantial investment – and future Annual Installments of Special Assessments that would be due and to ensure the Trustee received its allocable share of the Delinquent Assessments, interest and penalties to pay debt service on the Bonds.

30.     Concerns of the Trustee and Bondholder regarding the information made available to prospective purchasers of the Delinquent Property were not without basis – the current landowner acquired the Delinquent Property *via* foreclosure of a deed of trust and, after learning

*ACTIVE 62769145v6*

of the Special Assessments and other issues impairing the developability of the Delinquent Property, immediately failed to pay Special Assessments and other property taxes when due thereby harming the Trustee (holder of a legal interest in the Special Assessments), and Bondholder (holder of a beneficial interest in the Special Assessments), as well as other taxing authorities with property taxes and assessments levied on the Delinquent Property. The Trustee and Bondholder wanted to ensure this did not occur again.

31. Based on assurances of the City that it, too, wanted the tax sale auctions to be as successful as possible, Plaintiff and Bondholder incurred substantial expense – approximately $122,000 – to engage consultants to conduct a review of site conditions affecting the Delinquent Property and offered the work product of same to the City and City Treasurer for their use in support of the tax sale auctions to be conducted in accordance with the Decrees of Sale.

32. On October 19, 2021, the Authority posted to the Electronic Municipal Marketplace Access website notice that the Special Commissioner for the City, Sands Anderson, PC (the "*Original Special Commissioner*"), would be offering the Delinquent Property for sale *via* online auction with bidding to close on Tuesday, December 14, 2021 (the "*First Auction*"). *Listed Event Notice,* **Exhibit 12** attached hereto.

33. Without explanation to UMB Bank and the Bondholder, the City Treasurer cancelled the First Auction on the day prior to its closing and, thereafter, replaced the Original Special Commissioner with Jason Dunn, PLC (the "*Successor Special Commissioner*").

34. The Successor Special Commissioner scheduled the second tax auction for June 15, 2022 (the "*Second Auction*"), and at the City Treasurer's direction, and over the objections of the Bondholder, announced a reserve price of $5,100,000.00 – a $1,600,000.00 increase from the First Auction where the Original Special Commissioner received no bids prior to its cancellation. The

*ACTIVE 62769145v6*

Second Auction failed, and the City and City Treasurer has since refused to reschedule the tax sale or advise when they intend to do so.

35.    Since the failed Second Auction, the City Treasurer[3] has assumed a seat on the board of the homeowners' association to which the Delinquent Property is subject.  Upon information and belief, he has no membership interest in the association.  Article of *The Virginian-Pilot* (September 17, 2022), **Exhibit 13**.

36.    The City Treasurer's participation on the association's board, while not being an association member but being subject to the covenants and duties of the City to timely collect and remit to the Trustee Delinquent Assessment and related interest and penalties (covenants and duties in which the City and City Treasurer are in breach), is very irregular and represents a conflict of interest on the part of the City Treasurer.

37.    The Authority is in breach of its obligations under the Master Indenture and the City and City Treasurer are in breach of their obligations under the Special Assessment Agreement.

38.    As the current trustee, UMB Bank acts in the interests of the Trust Estate and the Master Indenture conveys to the Trustee certain rights relative thereto [*see, e.g.,* Master Indenture at §§ 9.6, 11.3, 11.7 and 11.8.], including the right to enforce the Authority's rights and remedies under the Special Assessment Agreement and protect the Trustee's security interest in the Pledged Revenues. Master Indenture at §9.6.

39.    As of the date hereof, the Delinquent Assessments alone, exclusive of interest and penalties, are in excess of $9,300,000.

## CAUSES OF ACTION

### COUNT ONE
### BREACH OF CONTRACT
### – MASTER INDENTURE

---

[3] As well as relatives of two former members of the Portsmouth City Council.

11

*(AGAINST THE AUTHORITY)*

40.     UMB Bank incorporates by reference and re-alleges the allegations contained in all preceding paragraphs as if fully set forth herein.

41.     The Master Indenture was executed by the Authority contemporaneously with its issuance of the Bonds for purposes of, *inter alia*, establishing the Trust Estate, assigning and pledging to the Trustee the Pledged Revenues and granting to the Trustee a security interest thereon, and covenanting and agreeing to certain matters set forth in the Master Indenture including the timely payment of principal and interest on the Bonds and collection and enforcement of Special Assessments.  The Master Indenture constitutes a valid and binding contract between the UMB Bank and the Authority.

42.     As the current trustee, UMB Bank acts in the interests of the Trust Estate and the Master Indenture conveys to the Trustee rights relative thereto [*see, e.g.,* Master Indenture at §§ 9.6, 11.3, 11.7 and 11.8].

43.     The Authority has breached and is in continuing breach of its contractual covenants and obligations under the Master Indenture by, *inter alia*, (i) failing to pay principal and interest when due on the Bonds [Master Indenture at §9.1]; and (ii) failing to enforce the terms of the Special Assessment Agreement to ensure the timely collection, enforcement and remittance to the Trustee of Delinquent Assessments, penalties and interest [Master Indenture at §9.3].

44.     The Trustee, on behalf of the Trust Estate for the Bonds, has suffered distinct injury as a proximate result of the Authority having breached its contractual obligations under the Master Indenture including, but not limited to, the Trustee not receiving Delinquent Assessments, penalties and interest and UMB Bank incurring substantial expenditure of legal fees and expenses to defend the Trustee's right, title and interest in and to the Pledged Revenues.  Damages incurred

12

by the Trustee to date in the form of Delinquent Assessments equal or exceed are in excess of $9,300,000, exclusive of penalties and interest.

WHEREFORE, based on the allegations contained in all preceding paragraphs, UMB Bank requests entry of a judgment against the Authority adjudicating (i) the Master Indenture to be a valid and legally enforceable agreement under which the Authority is obligated to perform, (ii) the Authority is in breach of its covenants and agreements in the Master Indenture, (iii) that the Trustee, on behalf of the Trust Estate for the Bonds, has suffered actual damages from the Authority's breach of its covenants and agreements in the Master Indenture, and (iv) for an award of attorney's fees against the Authority [Master Indenture at §12.4].

### COUNT TWO
### BREACH OF CONTRACT
### – SPECIAL ASSESSMENT AGREEMENT
### (AGAINST THE CITY)

45.     UMB Bank incorporates by reference and re-alleges the allegations contained in all preceding paragraphs as if fully set forth herein.

46.     The Special Assessment Agreement was executed by the Prior Developer, Authority and the City contemporaneously with the Authority's issuance of the Bonds for purposes of the City assigning its interest in the Special Assessments to the Authority for the payment of principal and interest on the Bonds and the parties agreeing to, *inter alia*, that the Special Assessments are subject to the same interest, penalties, and lien priorities as regular property taxes of the City and to timely bill, collect and enforce the collection of Special Assessments, penalties and interest.  The Special Assessment Agreement constitutes a valid and binding contract between the City and the Authority.

47.     As the current trustee, UMB Bank acts in the interests of the Trust Estate and the Master Indenture conveys to the Trustee certain rights relative thereto [*see, e.g.,* Trust Indenture

13

at §§ 9.6, 11.3, 11.7 and 11.8.], including the right to enforce the Authority's rights and remedies under the Special Assessment Agreement and protect the Trustee's security interest in the Pledged Revenues [Master Indenture at §9.6].

48.     The Trustee, on behalf of the Trust Estate for the Bonds, has suffered distinct injury as a proximate result of the City having breached its contractual obligations under the Special Assessment Agreement including, but not limited to, the Trustee not receiving Delinquent Assessments, penalties and interest and the substantial expenditure of legal fees and expenses to defend the Trustee's right, title and interest in and to the Pledged Revenues.  Damages incurred by the Trustee to date in the form of Delinquent Assessments are in excess of $9,300,000, exclusive of penalties and interest.

WHEREFORE, based on the allegations contained in all preceding paragraphs, UMB Bank requests entry of a judgment against the City adjudicating (i) the Special Assessment Agreement to be a valid and legally enforceable agreement under which the City is obligated to perform, (ii) the Trustee has the authority under the Master Indenture to exercise all rights of the Authority under the Special Assessment Agreement including matters relating to the delivery and receipt of Pledged Revenues, (iii) the City is in breach of its covenants and agreements in the Special Assessment Agreement, and (iv) that the Trustee, on behalf of the Trust Estate for the Bonds, has suffered actual damages from the City's breach of its covenants and agreements in the Special Assessment Agreement.

### COUNT THREE
### DECLARATORY JUDGMENT –
### ALLOCATION OF FORECLOSURE PROCEEDS
### (AGAINST THE CITY AND CITY TREASURER)

49.     UMB Bank incorporates by reference and re-alleges the allegations contained in all preceding paragraphs as if fully set forth herein.

14

50.    The Special Assessment Agreement, to which the City and Authority are parties, and the attached Rate and Method unequivocally provides that the Special Assessments, including penalties and interest thereon, shall be collected in the same manner and have the same lien priority as regular property taxes of the City [Special Assessment Agreement at §4; Rate and Method at ¶¶E, F].

51.    The covenant to collect and remit to the Trustee penalties and interest on Delinquent Assessments is further evidenced by the express terms of the Assessment Notice and Master Indenture [Master Indenture at p. 10 and §§7.2, 9.3 and 10.2].

52.    As the current trustee, UMB Bank acts in the interests of the Trust Estate and the Master Indenture conveys to the Trustee certain rights relative thereto [*see, e.g.,* Trust Indenture at §§ 9.6, 11.3, 11.7 and 11.8.], including the right to enforce the Authority's rights and remedies under the Special Assessment Agreement and protect the Trustee's security interest in the Pledged Revenues [Master Indenture at §9.6].

53.    The City and City Treasurer maintain that the Delinquent Assessments and penalties and interest accruing thereon are not *pari passu* with other taxes collected by the City, including delinquent taxes that are the subject of the Decrees of Sale.

54.    UMB Bank is amenable to this Court making an interpretive judicial determination resolving the controversy by and between UMB Bank, as Trustee, and the City and City Treasurer, this Court has jurisdiction to do so pursuant to Virginia Code § 8.01-184, *et seq.,* and no other adequate relief can otherwise be attained by UMB Bank by way of legal or administrative means absent an interpretive judicial determination by this Court.

WHEREFORE, based on the allegations contained herein, UMB Bank seeks relief and respectfully request that this Court enter judgment declaring that the Delinquent Assessments and

*ACTIVE 62769145v6*

penalties and interest accruing thereon are *pari passu* with other taxes collected by the City, including delinquent taxes that are the subject of the Decrees of Sale.

## COUNT FOUR
## ACCOUNTING
## (AGAINST ALL DEFENDANTS)

55. UMB Bank incorporates by reference and re-alleges the allegations contained in all preceding paragraphs as if fully set forth herein.

56. The Master Indenture was executed by the Authority contemporaneously with its issuance of the Bonds for purposes of, *inter alia*, establishing the Trust Estate, assigning and pledging to the Trustee the Pledged Revenues and granting to the Trustee a security interest thereon, and covenanting and agreeing to certain matters set forth in the Master Indenture including, but not limited to, the timely payment of principal and interest on the Bonds and collection and enforcement of Special Assessments.

57. The Master Indenture constitutes a valid and binding contract between the UMB Bank and the Authority and, therefore, creates a duty on the part of the Authority to act as a fiduciary for the benefit of the Trustee with regard to the collection and remittance of Delinquent Assessments and penalties and interest thereon.

58. The Special Assessment Agreement was executed by the Prior Developer, Authority and the City contemporaneously with the Authority's issuance of the Bonds for purposes of the City assigning its interest in the Special Assessments to the Authority for the payment of principal and interest on the Bonds and the parties agreeing to, *inter alia*, that the Special Assessments are subject to the same interest, penalties, and lien priorities as regular property taxes of the City and to timely bill, collect and enforce the collection of Special Assessments, penalties and interest.

16

59.    The Supplemental Assessment Agreement constitutes a valid and binding contract between the Authority and the City and, therefore, creates a duty on the part of the City and City Treasurer to act as a fiduciary for the benefit of the Authority with regard to the collection and remittance of Delinquent Assessments and penalties and interest thereon.

60.    As the current trustee, UMB Bank acts in the interests of the Trust Estate and the Master Indenture conveys to the Trustee certain rights relative thereto [*see, e.g.,* Trust Indenture at §§ 9.6, 11.3, 11.7 and 11.8.], including the right to enforce the terms of the Master Indenture and the Authority's rights and remedies under the Special Assessment Agreement and protect the Trustee's security interest in the Pledged Revenues [Master Indenture at §9.6].

61.    The Special Assessment Agreement, Rate and Method, Assessment Notice and Master Indenture clearly support the conclusion that the Delinquent Assessments and penalties and interest accruing thereon are *pari passu* with other taxes collected by the City, including delinquent taxes that are the subject of the Decrees of Sale – *however,* the City and City Treasurer maintains that is *not* the case.

62.    The Authority is obligated to maintain proper books and records in which full and correct entries are made pursuant to generally accepted accounting principles and have conducted annual audits by an independent certified public accountant.

WHEREFORE, UMB Bank is entitled to access to all of its books, records, and financial statements relating to the collection, enforcement and remittance to the Trustee of Special Assessments, penalties and interest and an accounting regarding same.

*ACTIVE 62769145v6*

Date:  January 20, 2022


On behalf of
UMB BANK, N.A., AS TRUSTEE


/s/ *Paul A. Driscoll*
_____
Peter G. Zemanian, VSB No. 24922
Paul A. Driscoll, VSB No. 33476
Zemanian Law Group
223 East City Hall Avenue, Suite 201
Norfolk, Virginia  23510
Telephone: (757) 622-0090
Facsimile: (757) 622-0096
E-mail: pete@zemanianlaw.com
            paul@zemanianlaw.com

*Counsel for Plaintiff*

*ACTIVE 62769145v6*

**EXHIBIT LIST**

| | |
|---|---|
| Exhibit 1 | Ordinance No. 2005-71 |
| Exhibit 2 | Memorandum of Understanding |
| Exhibit 3 | Assessment Ordinance (dated February 14, 2006) |
| Exhibit 4 | Special Assessment Agreement (dated February 15, 2006) |
| Exhibit 5 | Master Indenture (dated as of May 1, 2006) |
| Exhibit 6 | Opinion of the G. Timothy Oksman, City Attorney (dated May 24, 2006) |
| Exhibit 7 | New Port Community Development Authority – Notice of Special Assessments (dated |
| Exhibit 8 | Description of Delinquent Property |
| Exhibit 9A | Decree of Sale – Case No. CL19-1591 |
| Exhibit 9B | Decree of Sale – Case No. CL19-1593 |
| Exhibit 9C | Decree of Sale – Case No. CL19-1594 |
| Exhibit 10 | Landen Correspondence Regarding Allocation (dated December 11, 2021) |
| Exhibit 11 | Byrd Correspondence Regarding Allocation (dated December 10, 2021) |
| Exhibit 12 | Listed Event Notice of the Authority (dated October 19, 2021) |
| Exhibit 13 | Article in *The Virginian-Pilot* |